Dan GLOVER, as Personal Representative of the Estate of Paul Edward Glover, Carolyn Glover, Curtis A. Nestegard, and Jewel M. Nestegard, Appellants,

v.

WESTERN AIR LINES, INC.; Avis De Mexico, S.A. De C.V.; Avis Rent–A–Car, Inc.; Avis International Ltd., Inc.; Avis Rent–A–Car International, Inc.; Avis Rent–A–Car System, Inc.; Avis International, Inc.; Seguros La Provincial S.A.; and John Doe, Appellees.

No. S–1838.

Supreme Court of Alaska.

Nov. 27, 1987.

Edward L. Miner, Ross, Gingras, Bailey & Miner, Anchorage, for appellants.

Mark A. Sandberg, Camarot, Sandberg & Smith, Anchorage, for appellees.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

The primary issue presented by this appeal is whether Alaska may, consistently with constitutional due process protections, assert in personam jurisdiction over a non-resident franchisee and two non-resident franchisors on a cause of action which arose in Mexico. The trial court determined that it could not exercise jurisdiction over these defendants and, accordingly, dismissed appellees Avis de Mexico, S.A. de C.V. (Avis Mexico), Avis International, Ltd. (Avis International), and Avis Rent–A–Car System, Inc. (Avis U.S.) from the action.

We now reverse the judgment of the superior court as to Avis U.S. and affirm as to Avis Mexico and Avis International.

## I.

According to the pleadings, Paul Glover, Carolyn Glover, Curtis Nestegard, and Jewel Nestegard (hereinafter referred to collectively as Glover) decided to take advantage of a special promotional package offered by Western Airlines called the "Fiesta Fare" and vacation in Mexico. While in Mexico, the Glovers rented a car from Avis Mexico and attempted to drive this car from Mexico City to Queretaro. En route, the Glovers were set upon by bandits. Paul Glover was killed, the three passengers suffered varying degrees of injury, and the car was wrecked.

Upon their return to the United States, the Glovers brought suit in Alaska against Western Airlines, Avis U.S., Avis Mexico, and Avis International. They alleged that the defendants were guilty of certain unfair trade practices, had made certain misrepresentations and other fraudulent statements, and had failed to warn the Glovers of the hazards they might face in Mexico. The complaint also alleged that Avis Mexico "is a subsidiary, franchisee, division or affiliate" of both Avis International and Avis U.S., and that all three Avis defendants did business in Alaska.

The Avis defendants moved to dismiss for lack of jurisdiction. Specifically, they argued that Avis Mexico does no business in the United States, that Avis International and Avis U.S. are Delaware corporations with principal places of business in New York and do not do business in Alaska, that none of the Avis defendants directly solicits business or advertises in Alaska, and that none have any employees, bank accounts, interests in property, or registered agents in Alaska.

In opposition to the Avis defendants' motion, the Glovers showed that Avis U.S. is a franchisor which licenses the Avis name in Alaska, that Avis U.S. maintains considerable control over the local franchisees, and that at least one local franchisee paid to

Avis U.S. a total of $10,985.12 in 1985. In addition, the Glovers showed that Avis U.S. maintains a toll-free "800" number by which Alaskan consumers may gain access to Avis' central reservations system in Tulsa, Oklahoma, to place car rental reservations with any Avis franchisee anywhere in the world. Finally, it appears that Avis U.S. places advertising in national and international publications which are calculated to reach Alaskan consumers. The Glovers were unable to define the relationship between Avis U.S. and Avis International, or between either of them and Avis Mexico, but indicated that "[p]resumably the business of the Mexico licensee, including the amount of required liability insurance, is regulated, in a manner similar to the regulations imposed on [the Alaskan franchisees]."

Notwithstanding this showing, the superior court dismissed the action as to all three Avis defendants. This appeal followed.

## II.

This court may exercise jurisdiction under Alaska's long-arm statute [1] to the maximum extent permitted by due process under the federal constitution. *E.g., American National Bank and Trust v. International Seafoods of Alaska,* 735 P.2d 747, 749 (Alaska 1987); *Modern Trailer Sales v. Traweek,* 561 P.2d 1192, 1195 (Alaska 1977); *Jonz v. Garrett/Airesearch Corp.,* 490 P.2d 1197, 1199 (Alaska 1971). Due process permits the assertion of jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 811 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).[2] In essence, jurisdiction may be asserted when it is found that the defendant's contacts with the forum are substantial enough that the defendant could reasonably anticipate being haled into court in that forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 542 (1985).[3] The defendant's contacts with the forum should be found sufficiently substantial whenever a defendant has maintained "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404, 412 (1985).[4] When a controversy is "related to" or "arises out of" a defendant's contacts with the forum, the exercise of jurisdiction is said to be "specific" and is justified on the basis of the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414 & n. 8, 104 S.Ct. at 1872 & n. 8, 80 L.Ed.2d at 411 & n. 8.[5] Even where the cause of action does not "relate to" or "arise out of" the defendant's contacts with the forum, however, "general" jurisdiction may be asserted if there are sufficient generalized contacts between the state and the defendant. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 411.[6]

While these jurisdictional standards provide no "bright line," they suffice to convince us that it would not be unfair or

---

1. Personal jurisdiction in Alaska is exercised pursuant to AS 09.05.015.

2. *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 540 (1985); *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797 (1984); *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565– 66, 62 L.Ed.2d 490, 499 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

3. *See also World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65, 62 L.Ed.2d at 498.

4. *See also Perkins v. Benguet Consolidated Mining,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492 (1952); *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 159, 90 L.Ed. at 102.

5. *See also Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683, 698 (1977).

6. *See also Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478, 79 L.Ed.2d at 797; *Perkins,* 342 U.S. at 446, 72 S.Ct. at 418–19, 96 L.Ed. at 493.

unreasonable to require Avis U.S. to answer in Alaska for a claim which arose in Mexico.[7] Initially, we note that, because of Avis U.S.' business activities within Alaska, the Glovers' claims are encompassed by AS 09.05.015(a)(1)(D).[8] Though the record is somewhat sparse, it appears that in 1985 Avis U.S. collected $10,985.12 from a single local franchisee based upon that franchisee's contract with Avis U.S. This alone is more than sufficient to characterize Avis U.S.' business activities within Alaska as "substantial." It only remains, then, for us to determine whether the exercise of jurisdiction will offend the basic precepts of the due process clause. In this regard, we find both *Perkins v. Benguet Consolidated Mining*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and *Helicopteros, supra*, instructive.

In *Perkins*, the issue before the court was whether due process would permit Ohio to exercise in personam jurisdiction over a Philippine corporation on a cause of action unrelated to the defendant's contacts with Ohio. 342 U.S. at 447, 72 S.Ct. at 419, 96 L.Ed. at 493. In holding that Ohio could exercise jurisdiction in this case, the Supreme Court noted that when the defendant's Philippine operations had been interrupted by the Japanese occupation, its president had returned to his home in Ohio. While he was in Ohio, the company continued to operate through him in a limited way, including carrying on its business correspondence and drawing and distributing salary checks for the president and two secretaries. In addition, the president maintained two active bank accounts in Ohio, oversaw from Ohio the rehabilitation of the company's Philippine properties after the occupation ended, and dispatched funds to cover purchases of machinery for that rehabilitation. Finally, it appears that the directors' meetings were held in Ohio while the Japanese occupied the Islands. In short, while the Philippines were occupied and for a brief period thereafter, the company was, in essence, based in Ohio and carried on what limited business operations it could in that forum. The court concluded that under these circumstances, where the company was carrying on continuous and systematic business within the forum, it would not be unfair to subject the company to jurisdiction even on causes of action not related to that business. 342 U.S. at 448, 72 S.Ct. at 419, 96 L.Ed. at 494.

The Supreme Court in *Helicopteros* faced the similar issue of whether Texas could exercise in personam jurisdiction over a foreign corporation on a cause of action which was not related to that corporation's contacts with the forum state. 466 U.S. at 415–16, 104 S.Ct. at 1872–73, 80 L.Ed.2d at 411–12. In this case, plaintiff had sued a Columbian corporation (Helicol) in Texas on a cause of action which arose in Peru. Unlike the *Perkins* court, however, the Supreme Court determined in *Helicopteros* that Texas could not exercise jurisdiction even though Helicol had sent its chief executive officer to Houston for a contract negotiation session, had accepted into its New York bank account checks drawn on a Texas bank, had purchased helicopters, equipment and training services from Bell Helicopter in Texas for substantial sums, and had sent personnel to Bell's facilities in Fort Worth for training. 466 U.S. at 416, 104 S.Ct. at 1873, 80 L.Ed.2d at 412. The crucial distinction between *Perkins* and *Helicopteros* thus appears to hinge upon the nature of the business contacts. Whereas the contacts in *Perkins* were of a continuous and routine nature, the contacts

---

**7.** Because the exercise of jurisdiction must be justified as to each defendant individually, *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804, 813 (1984), we discuss its exercise over Avis International and Avis Mexico in part III *infra*.

**8.** AS 09.05.015(a)(1)(D) provides:

A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

(1) in an action, whether arising in or out of this state, against a defendant who, when the action is commenced,

. . . .

(D) is engaged in substantial and not isolated activities in this state, whether the activities are wholly interstate, intrastate, or otherwise. . . .

in *Helicopteros,* though substantial, were of a sporadic and intermittent nature.

The present action presents a factual scenario somewhere between these two cases. On one hand, Avis U.S. is not licensed to do business in Alaska, has no business agents or employees in Alaska, owns no property in Alaska and maintains no bank accounts in Alaska. In this respect, Avis U.S.' contacts in Alaska appear analogous to Helicol's in Texas. Avis U.S. is, however, a franchisor of the "Avis" name, has licensed that name to several Alaskan franchisees, maintains considerable control over the day-to-day operations of the franchisees, and receives substantial income from its licensing activities in Alaska. In addition, Avis U.S. maintains a toll-free "800" number by which Alaskan residents may call Avis U.S. in Tulsa, Oklahoma and make reservations for a rental car anywhere in the world. Finally, while Avis U.S. places no direct advertising in "Alaskan" publications, it does place advertisements in national and international publications with the expectation that these advertisements will reach Alaskan readers. Thus, far from being isolated, sporadic or insignificant, we believe that Avis U.S.' contacts with Alaska are of a continuing, systematic, routine and substantial nature. Because Avis U.S. has chosen to enter the Alaskan marketplace and has directed its activities in a limited but substantial way toward Alaskan residents, Avis U.S. has had fair warning that it may be subjected to suit within Alaska. We therefore conclude that there will be no unfairness in Alaska's exercising in personam jurisdiction over Avis U.S.[9] *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540; *World-Wide Volkswagen,* 444 U.S. 297–98, 100 S.Ct. at 567, 62 L.Ed.2d 501–02.

We are not unmindful that courts in several other jurisdictions have reached conclusions that may be perceived to be in conflict with our conclusion. *See, e.g., Gray v. O'Brien,* 777 F.2d 864, 867 (1st Cir.1985) (mere placement of advertising in national publication insufficient to allow exercise of jurisdiction over defendant); *Seymour v. Bell Helmet Corp.,* 624 F.Supp. 146, 149 (M.D.Ala.1985) (mere placement of advertisements in national publication insufficient to permit exercise of jurisdiction over defendant); *Oddi v. Mariner–Denver, Inc.,* 461 F.Supp. 306, 310 (S.D.Ind.1978) (mere fact that franchisor has franchisees within forum insufficient to permit exercise of jurisdiction over franchisor); *Guay v. Ozark Airlines,* 450 F.Supp. 1106, 1112 (D.Mass.1978) (flying of occasional charter flights into forum, maintenance of bank account, sale of tickets to forum residents through travel agent, and maintenance of "800" number insufficient contacts to permit exercise of jurisdiction over non-resident airline); *Gardner v. Braniff International,* 312 F.Supp. 844, 846 (D.Conn.1970) (maintenance of "800" number and single contract with a resident airline insufficient to permit exercise of jurisdiction over non-resident airline); *Holiday Inns v. Jamison,* 353 So.2d 1269, 1270 (Fla.App.1978) (allegations regarding advertising and solicitations of franchisor in favor of franchisee insufficient to confer jurisdiction over franchisor); *Drago v. Home Insurance,* 486 So.2d 940, 942 (La.App.1986) (fact that franchisor placed ads in yellow pages on behalf of its franchisees by itself insufficient to permit exercise of jurisdiction over franchisor); *J.E.T. Advertising Associates v. Lawn King, Inc.,* 84 A.D.2d 744, 443 N.Y.S.2d 745, 747 (1981) (fact that franchisor has franchisees operating within forum and maintains a local phone number insufficient without more to allow exercise of jurisdiction over franchisor); *White v. Arthur Murray, Inc.,* 549 P.2d 439, 441 (Utah), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976) (fact that franchisor occasionally visited local franchisee, furnished franchisee with instructional materials, and charged franchisee a percentage of income was insufficient to permit exercise of jurisdiction over franchisor). In

---

9. We reject as meritless Avis U.S.' argument that the exercise of jurisdiction in this case would be unfair because Avis U.S. is not physically present in Alaska. Physical absence from a forum does not by itself show that the exercise of jurisdiction would be unfair or unduly burdensome. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

all of these cases, however, the particular long-arm statute involved allowed the exercise of jurisdiction only when the non-resident defendant was "doing business" within the forum; in each case this "doing business" requirement was construed to be more restrictive than the basic "minimum contacts" requirement of the due process clause. By contrast, Alaska's long-arm statute permits the exercise of jurisdiction to the full extent permitted by the due process clause. *E.g., American National Bank,* 735 P.2d at 749. Thus, these cases are not sufficiently analogous to serve as persuasive authority.

We are aware of but one factually analogous case which involved a non-restrictive long-arm statute. In *Repp v. Holiday Inns,* 624 F.Supp. 851 (S.D.Ohio 1985), plaintiff was staying at a Holiday Inn in Tennessee and was injured there. Plaintiff brought suit in federal court against, among others, the non-resident franchisor Holiday Inns, Inc. In ruling that it had jurisdiction over the franchisor, the federal district court noted that the franchisor did maintain a substantial corporate presence in Ohio. *Id.* at 852. The exact nature of that presence, however, is not discussed. In addition, the court focused on the franchisor's significant advertising:

> There is also little question that Defendant engages in substantial advertising within Ohio in order to build its reputation to potential consumers as a reputable national hotel chain. This type of activity in Ohio leads to certain business benefits, both within the state of Ohio, and outside of it.... The Court finds it reasonable to accept that Defendant's presence and activity in Ohio was a competent producing cause of Plaintiff's decision to use one of Defendant's out-of-state facilities, and that, in fact, Plaintiff was engaging in the very type of conduct which Defendant's activity in Ohio sought to encourage.

*Id.* The analogy to the present action is close. As discussed above, Avis U.S. maintains a substantial and continuing presence in Alaska. In addition, Avis U.S. admits that it regularly places advertisements in publications which reach Alaskan consum-

ers, and the Glovers contend that it was this advertising which caused them to rent a car from an Avis franchisee in Mexico. The Glovers were therefore engaged in the very conduct which Avis U.S. sought to encourage. In such a case, it does not seem unreasonable or unfair to cause Avis U.S. to answer in Alaska for that conduct.

### III.

In contrast to the extensive contacts which have been shown to exist between Avis U.S. and Alaska, there is virtually no record evidence relating to Avis Mexico's or Avis International's contacts with Alaska. Indeed, so far as the record discloses, the only contact Avis Mexico has ever had with Alaska is that Avis Mexico leased, on a single occasion, a single car to Alaskan residents while the Alaskan residents were physically present in Mexico. The record fails to disclose any contact between Avis International and Alaska. Such evidence simply provides too slender a hook upon which to hang jurisdiction. *See World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500.

### IV.

In its opposition to the Avis defendants' motion to dismiss, the Glovers requested leave to conduct additional discovery. This motion was denied. In summary fashion, the Glovers argue that this denial was reversible error.

As a general matter, the decision to limit discovery is within the broad discretion of the trial court and its decision will not be reversed unless there has been an abuse of discretion. *Salitan v. Carrillo,* 69 N.M. 476, 368 P.2d 149, 153 (1961); *see also Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 729 (1983); *Wakabayashi v. Hertz Corp.,* 66 Hawaii 265, 660 P.2d 1309, 1315–16 (1983); *Commercial Union Insurance of New York v. City of Wichita,* 217 Kan. 44, 536 P.2d 54, 64 (1975); *Morast v. Auble,* 164 Mont. 100, 519 P.2d 157, 159 (1974). We see no reason for a different rule in this case.

The original complaint was filed on April 26, 1985. The Avis defendants filed the motion to dismiss on February 26, 1986, the order of dismissal issued July 15, 1986, and final judgment was rendered on September 3, 1986. The question thus becomes whether the trial court abused its discretion in ruling, more than one year after the complaint was filed, to dismiss for lack of jurisdiction rather than permit additional discovery. We note in this regard that the request for further discovery was perfunctory. No plan of discovery was set forth, nor was the purpose of such discovery even mentioned until a motion for reconsideration was made following entry of the final judgment. Even then, the only specific purpose noted was to determine "what monies the Avis defendants have received as a result of car rentals in the state of Alaska." Such an inquiry seems designed only to show contacts between Avis U.S. and Alaska and, thus, is irrelevant in view of our decision today. With respect to Avis Mexico and Avis International, we are unable to say under the foregoing circumstances that there was an abuse of discretion and, accordingly, the decision not to permit further discovery is affirmed.

### V.

For the reasons outlined above, the judgment of the trial court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

BURKE, J., not participating.